UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TILGHMAN COLE PERRY JR.,

    Plaintiff,                         Civil Action No. 13-10054
                                     District Judge Terrence G. Berg
    v.                               Magistrate Judge R. Steven Whalen

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Tilghman Cole Perry Jr. ("Plaintiff") brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion for summary judgment be DENIED and Plaintiff's motion GRANTED to the extent that the case be remanded for further administrative proceedings, pursuant to sentence four of § 405(g).

## PROCEDURAL HISTORY

Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on October 4, 2010, alleging disability as of September 16, 2010 (Tr. 158, 158-168). After the initial claim denial, Plaintiff requested an administrative hearing, held on December 14, 2011 in Detroit, Michigan (Tr. 26). Administrative Law Judge ("ALJ") Raymond Souza presided. Plaintiff, represented by non-attorney representative Mary

Salmon, testified (Tr. 31-43), as did Vocational Expert ("VE") Harry Sino (Tr. 44-48). On December 30, 2011, ALJ Souza found that Plaintiff was not disabled (Tr. 21). On November 5, 2012, the Appeals Council denied review (Tr.1-4). Plaintiff filed the present action on January 7, 2013.

## BACKGROUND FACTS

Plaintiff, born April 8, 1964, was 47 at the time of the administrative decision (Tr. 21, 158). He completed high school and one year of college (Tr. 278-279), and worked previously as an owner of a cleaning company, a cleaning supervisor, and truck driver (Tr. 279). He alleges disability due to headaches, depression, hypertension, Post Traumatic Stress Disorder ("PTSD"), and back and neck pain (Tr. 278).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

He currently lived by himself in a home owned by his brother (Tr. 31). His children were aged 21 and 19 but he was not in contact with them (Tr. 31). He was previously in the Army Reserve (Tr. 32). Symptoms of PTSD included anxiety, sleep disturbances, and heart palpitations (Tr. 33). He did not received treatment for back problems or hypertension (Tr. 34). He received care for bipolar disorder and PTSD from Community Care Services (Tr. 34). He currently took Ambilify and Paxil for psychological symptoms and sleep disturbances (Tr. 35). He experienced semimonthly migraine headaches but obtained good results from over-the-counter medication (Tr. 35).

Plaintiff lived previously in Philadelphia, but after having his car repossessed and becoming homeless, accepted his brother's offer of housing in Michigan (Tr. 34). He was generally distrustful of other people and information obtained by television (Tr. 36). He spent his waking hours lying in bed or interacting with old friends on Facebook (Tr. 36). He

had online access through his "smart phone" (Tr. 38).

He lost his most recent job after "[getting] into it with a boss" (Tr. 36). Before that, he lost multiple jobs due to "insubordination" (Tr. 36). He held a job as a truck driver between 2001 and 2007 and worked as a post office employee between 1983 and 1997 (Tr. 37). He was able to grocery shop, prepare simple meals, and wash his clothes (Tr. 37). He did not perform any other household chores (Tr. 37). His back problems were caused by a truck accident and "bounc[ing] up and down" during long truck rides (Tr. 39). His PTSD was attributable to a 1999 truck accident (Tr. 39).

In response to questioning by his representative, Plaintiff testified that during his stint as a post office worker, he was being "harassed," adding that during that period, his son was killed in a car accident (Tr. 41). He reiterated that he did not "trust people," noting that at one workplace, he had endured racially motivated harassment (Tr. 41-42). He stated that he had experienced some degree of harassment at every one of his former jobs (Tr. 42).

**B. Medical Evidence**[1]

### 1. Treating Sources

In December, 2008, Plaintiff reported that he wanted to restart Paxil for symptoms of PTSD (Tr. 387). In March, 2009, he reported that Paxil was effective in controlling anxiety and other symptoms of PTSD (Tr. 393, 408). April, 2010 treating records state that Plaintiff was advised to seek social counseling and resume taking Paxil (Tr. 320). October, 2010 intake notes by Issa Botros, M.D. state that Plaintiff experienced depression and PTSD (Tr. 322). Later the same month, Dr. Botros noted the absence of depression or sleep disturbances and a calm mood with normal affect (Tr. 325). Plaintiff reported that he was

---

[1]Conditions wholly unrelated to the disability have been reviewed in full but are omitted from the present discussion.

single but sexually active (Tr. 356). He did not exhibit psychological symptoms (Tr. 356). November, 2010 counseling notes state that "[w]ith psychiatry and counseling, Plaintiff's condition "should improve" (Tr. 351). In December, 2010, Plaintiff denied suicidal or homicidal plans or ideation (Tr. 365). He was cooperative, noting that he last worked in August, 2010 (Tr. 363). He was assigned a GAF of 50[2] (Tr. 364).

A January, 2011 intake assessment by Community Care Services states that Plaintiff experienced depression and symptoms of PTSD since a 1999 truck accident (Tr. 412). He reported limited results from psychotropic medication (Tr. 412). Plaintiff reported that he was currently living with his brother (Tr. 414). He opined that he was unemployed because of racism and that he had been "blackballed by the government," but acknowledged that he had received an honorable discharge from the Army Reserve (Tr. 415-416). He reported that he was able to drive his own vehicle and did not experience transportation problems (Tr. 416). He denied physical limitations or psychiatric hospitalizations (Tr. 417). He was diagnosed with a depressive disorder and PTSD (Tr. 423). He was assigned a GAF of 46 (Tr. 423). Treatment notes from the following month state that Plaintiff had recently upped his marijuana use (Tr. 425). He presented as "evasive" and "paranoid" (Tr. 429). Psychiatrist Choung C. Cho, M.D. gave Plaintiff a "fair" prognosis (Tr. 457). The following month, Dr. Cho composed a letter on Plaintiff's behalf, noting that she was currently treating Plaintiff for bipolar and PTSD (Tr. 430).

April, 2011 treating notes state that Plaintiff's affect was appropriate with an angry mood (Tr. 460). In May, 2011, Dr. Cho noted that Plaintiff experienced bipolar disorder with

---

[2]A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision*(*"DSM-IV-TR"*) at 34 (4th ed. 2000).

psychotic features as well as PTSD (Tr. 449). She found the presence of marked limitations in the ability to maintain concentration for extended periods, sustain an ordinary routine, follow work rules, work in coordination with others, work without psychological symptoms, and interact appropriately with the public, coworkers, or supervisors (Tr. 450-451). Dr. Cho found that Plaintiff experienced auditory hallucinations and "persecutory delusions" beginning in 1999 (Tr. 452).

Later the same month, Plaintiff reported that he was "feeling better" and looked forward to attending his brother's wedding (Tr. 466). The following month, Plaintiff reported conflict with his brother, noting that his brother accused him of losing his most recent job because of "his mouth" (Tr. 474). In July, 2011, Plaintiff reported that he had been riding his bike to a local book store (Tr. 483). He was "verbal and cooperative," noting that he had recently established contact with one of his daughters (Tr. 490). The following month, Plaintiff reported that he and his brother were fighting about religion and whether Plaintiff should drink beer (Tr. 494). He stated that he was studying his family's history (Tr. 495). The same month, Dr. Cho opined that while Plaintiff had used marijuana up until the present, his psychological problems would "exist and continue" regardless of marijuana use (Tr. 498). She stated however that "the continued use of marijuana would exacerbate his symptoms" (Tr. 498).

Treating notes from the same month state that Plaintiff enjoyed attending his brother's wedding but ended up arguing with other guests (Tr. 522). The following month, he exhibited depression after failing to make contact with his children on their birthdays (Tr. 520). In November, 2011, Plaintiff expressed anxiety about an upcoming SSI hearing (Tr. 513). The following week, Plaintiff reported good results from his current medication (Tr. 510). He presented as "clean and neatly groomed" and was "pleasant polite" but "somewhat

irritable" (Tr. 510).

## 2. Non-Treating Sources

In December, 2010, psychiatrist Basivi Baddigam, M.D. performed a consultative examination on behalf of the SSA (Tr. 334-337). Plaintiff reported nightmares and ongoing symptoms of PTSD stemming from a truck accident occurring in "1999 or 2000" with "almost daily" flashbacks (Tr. 335). Plaintiff stated that he isolated himself during bouts of depression (Tr. 335). He reported that he was argumentative and experienced conflict with authority figures but was not violent (Tr. 335). He denied suicide attempts (Tr. 335).

Dr. Baddigan found that Plaintiff's description of his behavior was not consistent with a diagnosis of PTSD (Tr. 335). He noted that Plaintiff had not received psychiatric treatment (Tr. 335). Plaintiff denied legal problems but admitted that he smoked marijuana for the past seven months (Tr. 335). Dr. Baddigam found the presence of a depressive disorder, intermittent explosive disorder, cannabis abuse, and a history of alcohol abuse (Tr. 337). He gave Plaintiff a "guarded" prognosis but opined that he was capable of handling his own funds (Tr. 337).

The same day, physiatrist Elizabeth W. Edmond, M.D. conducted a physical examination on behalf of the SSA, observing that Plaintiff's speech was clear (Tr. 339). Plaintiff reported pain of the left ankle but could "tandem walk adequately" (Tr. 339). Dr. Edmond found that left ankle swelling was possibly attributable to gout (Tr. 340).

In September, 2011, Terrance A. Mills, Ph.D. noted that Plaintiff had been fired multiple times "because he argue[d] with people" (Tr. 500). Dr. Mills noted that Plaintiff was in contact with reality but appeared unable to focus on one subject at a time (Tr. 501). Dr. Mills opined that Plaintiff was "not stable enough to do work related activities" due to "difficulty concentrating, staying on topic of a conversation," and former workplace conflicts

(Tr. 502). He assigned Plaintiff a GAF of 45 (Tr. 502). He found that Plaintiff experienced marked limitation in understanding, remembering, or carrying out detailed instructions, making judgments, and interacting appropriately with supervisors, coworkers, or the public (Tr. 503-504).

### C. Vocational Expert Testimony

VE Harry Sino placed Plaintiff's past relevant work as a delivery driver as at the medium[3] exertional level and Specific Vocational Preparation ("SVP") 3[4]; cleaner, medium/SVP 2; cleaner-supervisor, medium/SVP 6; and postal clerk, light/SVP 2 (Tr. 45-46). The ALJ then posed the following set of hypothetical limitations to the VE, taking into account Plaintiff's age, education, and work experience:

> [A]ssume a person . . . who is able to do medium work, must avoid all use of hazardous machinery and all exposure to unprotected heights. Work is limited to simple as defined in the DOT, as SVP levels 1 and 2, routine and repetitive tasks, with only occasional decision making, only occasional changes in the work setting, and no strict production quota with an emphasis on a per-shift rather than any per-hour basis, with only occasional interaction with the public, coworkers and supervisors. Could that person perform [his] past work?

---

[3] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

[4] SVP measures the "amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appendix C, http://www.occupationalinfo.org/appendxc1.html#II (last visited on November 18, 2013). Pursuant to 20 C.F.R. 404.1568, "unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." SSR 00-04p.

(Tr. 46).

The VE testified that given the above limitations, the individual could perform his past relevant work as a cleaner (Tr. 46). The VE testified further that if the hypothetical were amended to allow the individual to "work in isolation with only occasional supervision," no competitive employment would be available (Tr. 46). He stated that if the original hypothetical were changed to allow only light work, rather than medium work, the job of cleaner would be eliminated but would allow the unskilled (SVP 2) work of hand packager (1,000 positions in the regional economy); small products assembler (2,500); and visual inspector (1,000) (Tr. 47). The VE testified that if the same individual were required to work "in isolation with only occasional supervision," all of the exertionally light positions would be eliminated (Tr. 47). He concluded by stating that his testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("DOT") (Tr. 48).

### D.     The ALJ's Decision

Citing the medical records, ALJ Souza found that Plaintiff experienced the severe impairments of "disorder of the back; hypertension; history of [PTSD]; [and] bipolar disorder" but that none of the conditions met or equaled any impairment listed in 20 C.R.F. Part 404, Subpart P, Appendix 1 (Tr. 13). The ALJ found that Plaintiff experienced moderate limitation in activities of daily living, social functioning, and concentration, persistence, or pace (Tr. 13). The ALJ found that Plaintiff retained the residual functional capacity ("RFC") for medium work with the following additional limitations:

> [C]laimant can stand and/or walk (with normal breaks) for a total of 8 hours in an 8-hour workday; avoid all exposure to hazardous machinery, and unprotected heights; work is limited to simple, as defined in the DOT as SVP 1 or 2, routine, and repetitive tasks; work in a low stress job, defined as having only occasional, decision making required; only occasional changes in the work setting, no strict production quotas, emphasis on a per shift rather than per hour basis; only occasional interaction with the public; only occasional interaction with co-workers and supervisors (Tr. 14).

Citing the VE's testimony, the ALJ found that Plaintiff could perform his past relevant work as a cleaner (Tr. 20).

The ALJ discounted the allegations of disability, noting that a downturn in Plaintiff's condition was attributable to the failure to take prescribed psychotropic medication (Tr. 15-16). The ALJ rejected Dr. Cho's May, 2011 opinion on the basis that the accompanying progress notes were insufficient to support the assessment (Tr. 18). He also rejected Dr. Mills' consultative findings, noting that they were based only on Plaintiff's "subjective reports" (Tr. 19).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

**FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

**ANALYSIS**

**The Weight Accorded to Treating and Consultative Sources**

Plaintiff argues that the ALJ failed to provide "good reasons" for rejecting Dr. Cho's May, 2011 opinion. *Plaintiff's Brief* at 4-11, *Docket #21* (citing C.F.R. 404.1527(c)(2)). On a related note, Plaintiff faults the ALJ for allotting significant weight to Dr. Baddigam's December, 2010 consultative findings, noting that Dr. Baddingam's findings stand at odds with both Dr. Cho's opinion and the September, 2011 conclusions of Dr. Mills, a second consultative examiner. *Id.* at 11-13.

Plaintiff argues correctly that an opinion of limitation or disability by a treating

-10-

source is entitled to deference. "[I]f the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue,* 573 F. 3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004); C.F.R. 404.1527(c)(2)). Further,

> [i]f the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion. *Wilson,* at 544.

In addition, "the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue* 661 F.3d 931, 937 (6th Cir. 2011)(citing 20 C.F.R. § 404.1527(c)(2)). The failure to provide "good reasons" constitutes reversible error. *Wilson,* at 544-446.

As required by 20 C.F.R. § 404.1527, the ALJ supplied a number of reasons for rejecting Dr. Cho's opinion of "marked" psychological limitations (Tr. 18, 449-452). The ALJ noted that both Dr. Cho and Plaintiff's therapists "relied quite heavily" on Plaintiff's subjective accounts of symptomology (Tr. 18). The ALJ stated that Dr. Cho's February, 2011 diagnosis of bipolar disorder with psychotic features was unsupported by any "objective medical evidence" (Tr. 18). He cited June, 2011 therapy notes stating that Plaintiff was looking forward to attending his brother's wedding (Tr. 18). The ALJ found that Dr. Cho's disability opinion could have been prompted by sympathy or in order to "avoid unnecessary doctor/patient tension" (Tr. 18).

However, the ALJ's rejection of Dr. Cho's opinion is problematic for multiple

-11-

reasons. First, the lack of "objective" evidence to support a psychiatric diagnosis, by itself, does not constitute a good reason for the rejection of a treating opinion. "The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques." *Brooks v. Commissioner of Social Sec.,* 531 Fed.Appx. 636, 643-644 (August 6, 2013)(citing *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir.1989)). "When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology." *Id.* (internal punctuation omitted). The rejection of Dr. Cho's opinion because it was based on clinical observations and subjective complaints is not a "good reason."

The ALJ's other bases for rejecting Dr. Cho's opinion do not amount to "good reasons." The ALJ's citation to a therapy report stating that Plaintiff looked forward to his brother's wedding (Tr. 466) is overshadowed by the bulk of the therapy notes from the same period showing that he was "evasive" and "paranoid" (Tr. 429) "angry" (Tr. 460) had multiple arguments with his brother (Tr. 474, 494) and was involved in an altercation with other guests at his brother's wedding (Tr. 522). Records showing that Plaintiff occasionally exhibited an improvement in psychological symptoms do not contradict Dr. Cho's findings. My own review of the transcript shows that none of the treating records created by Dr. Cho or the therapists working under his direction suggest that the disability opinion was colored by sympathy for Plaintiff. While Dr. Cho's opinion was contradicted by Dr. Baddigam's consultative finding that Plaintiff was not disabled, "[t]he mere fact that a treating physician's opinion is contradicted by another source is not a sufficient basis for its rejection." *Harris v. Commissioner of Social Sec.* 2012 WL 313743, *5 (E.D.Mich.,January 11, 2012)(citing

*Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir.2009)) ("Nothing in the regulations indicates, or even suggests, that the administrative judge may decline to give the treating physician's medical opinion less than controlling weight simply because another physician has reached a contrary conclusion.").

The ALJ's adoption of Dr. Baddigam's December, 2010 consultative opinion over the opinion of Dr. Cho, a long-term treating source, is also undermined by Dr. Mills' September, 2011 conclusion that Plaintiff was "not stable enough to do work related activities" (Tr. 502).  To be sure, the ALJ was entitled to reject Dr. Mills' speculation that Plaintiff received a traumatic brain injury because the clinician had "no training or licensing" to make such a diagnosis (Tr. 19).  On the other hand, Dr. Mill's finding of several marked psychological limitations, based on his own observations (Tr. 503-504) lends credence to Dr. Cho's nearly identical findings (Tr. 450-451).

Because the ALJ did not provide adequate reasons for rejecting Dr. Cho's opinion, a remand is required. "Failure to provide 'good reasons' for rejecting the opinion of a treating source generally requires remand, even if 'a different outcome on remand is unlikely.'" *LaRiccia v. Commissioner of Social Sec.,* --- Fed.Appx. ----, 2013 WL 6570777, 7 (6th Cir. December 13, 2013)(citing *Wilson*, 378 F.3d at 546).  While the current treating physician analysis is not sufficiently articulated, Plaintiff has not established an "overwhelming" case for disability.   *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir.1994).  Thus, he is entitled to a remand for further consideration rather than an award of benefits.  *Id.*  Upon remand, the ALJ should be required to articulate adequate reasons for rejecting Dr. Cho's opinion and if necessary, take additional testimony, and/or order additional consultative testing.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's motion for summary judgment be DENIED and Plaintiff's motion GRANTED to the extent that the case be remanded for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g)..

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 8, 2014                     s/R. STEVEN WHALEN
                                           UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregiong document was sent to parties of record on January 8, 2014, electronically and/or by U.S. mail.

                                           s/Michael Williams
                                           Case Manager for the
                                           Honorble R. Steven Whalen